## VAN BUSKIRK v. HOY.

DECEDENT'S NOTE—CONSIDERATION—EVIDENCE.

The presumption of consideration for decedent's note arising from the recital therein that it was for value received, supplemented by testimony that she was the payee's mother, and that, a number of years before the note was given, personal property was furnished her and her husband by him, under such circumstances that she recognized her obligation to make some compensation therefor, is sufficient evidence that it was given for a valuable consideration to warrant its submission to the jury. GRANT, J., dissenting.

Error to Montcalm; Daboll, J., presiding. Submitted June 16, 1897. Decided September 23, 1897.

Charles E. Van Buskirk presented a claim against the estate of Sally Ann Van Buskirk, deceased, for an amount due on a promissory note. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, Robert W. Hoy, the administrator, brings error. Affirmed.

*Vernon H. & H. H. Smith*, for appellant.

*McGarry & Nichols* and *F. A. Miller*, for appellee.

GRANT, J. Claimant is the son of the deceased, Sally Ann Van Buskirk, who died in August, 1894. The claim is evidenced by the following paper:

"$250.              Conesus, N. Y., March 1, 1884.
"At my death, for value received, I promise to pay to
Charles E. Van Buskirk $250, with interest.
                              her
                "Sally Ann  X  Van Buskirk.
                              mark
"Floyd McNinch, Witness to Mark."

The claim was disallowed by the commissioners. Claimant appealed to the circuit court, where the case was tried before a jury, who rendered a verdict for the claimant for $442.50. Many errors are assigned. The principal objections made to the right of recovery are (1) that no consideration passed to the deceased for the note; (2) that the note was made on Sunday, and is therefore void; (3) that the date of the note was altered, and that this alteration is unexplained.

The paper was executed at the house of the witness McNinch, who married a daughter of the deceased. She had gone from Michigan to New York on a visit, and the paper was executed at McNinch's house within half an hour of her arrival there. It is conceded that no consideration passed when the note was given. If any consideration was given, it was in 1875 or 1876, at which time Mrs. Van Buskirk was living with her husband, who died in 1879. McNinch testified that Charles was present when the note was executed, and that there was talk about the consideration, and that it was goods and chattels. The question was asked him:

"What were the goods and chattels which it was talked he had let her have?
"*Answer*: Well, I couldn't say that he let her have them. They were talking there that he had left some goods and chattels on the farm there when he went away from home, and she wished to compensate him for them."

He further testified that his impression was that there were about 10 tons of hay and some wheat and some oats; "somewhere in the neighborhood of 60 bushels of wheat and a couple hundred bushels of oats. They talked about some money that he had let her have. I think they said

$50." There is testimony also tending to show that Charles was told by his father in 1875 that, if he would work his father's place, he might have all he could make away from home, and that he worked the place of an uncle in that or the following year; and there is some testimony, though not of a very convincing nature, that he took some of the things he raised to his father's house, and left them there. Isaac Van Buskirk, a witness for and a cousin of the claimant, testified:

"*Q.* Did you know the fact of his [Charles] having the grain and stuff?

"*A.* Yes, sir.

"*Q.* Do you know what he did with it?

"*A.* My best recollection is that it was left on the farm to be used there."

There is no evidence that either his father or mother promised to pay for them, or that she received them or the benefit from them. Mrs. Van Buskirk was then living with her husband, had no business of her own, and was only engaged in the duties and cares of her household. If any one received these goods and chattels from claimant, it was his father. If any legal obligation to pay for them rested upon any one, it rested upon his father. Any parol promise made by his mother would be void under the statute of frauds, and any promise on her part, whether written or verbal, would be void because she was a married woman, and the transaction had no reference to her separate estate. She was under no moral or legal obligation to pay. If, therefore, she had promised to pay for them, the promise, being absolutely void, could not, after her husband's death, serve as a valid consideration for the note. *Hall* v. *Soule*, 11 Mich. 496; *Scott* v. *Bush*, 26 Mich. 420.

The statement that there was talk about some money that he had let her have is too indefinite to base a right of recovery upon. It does not amount to an admission upon her part that she had received any money from him. It does not pretend to give a single word of the conversation. In 1882, Charles gave his mother a note for $100, which

he admits he then borrowed of her, and afterwards paid $50 upon it. This is inconsistent with the theory that she owed him.

Claimant's counsel insist that there is a scintilla of evidence, which is enough to justify the verdict of the jury. A scintilla of evidence is not enough to sustain a verdict, especially against the estates of deceased persons. I think the record justifies the sole conclusion that no consideration passed from claimant to the deceased for this note, and that the court should have directed a verdict for the estate. It is unnecessary to discuss the other questions.

Judgment should be reversed, and a new trial ordered.

MOORE, J. I agree with Justice GRANT that claims against estates of deceased persons should be scrutinized with much care, but I cannot agree with him that there was not sufficient proof of the validity of plaintiff's claim to warrant its submission to a jury. The deceased had acknowledged the validity of the claim by a written instrument, which recited that it was given for value received. The deceased was not here to explain what the consideration was that led her to say in the note that it was given for value received. The claimant was prevented by the statute from testifying, so that he had to make such proof as he could. The very fact that deceased acknowledged that the note signed by her was for value received raised a presumption that it was given for a sufficient consideration. This presumption was supplemented by testimony that the maker of the note was the mother of claimant; that, a number of years before the note was given, personal property was furnished to Mrs. Van Buskirk and her husband by the plaintiff, under such circumstances that she recognized her obligation to make some compensation therefor. It may be, as Justice GRANT says in his opinion, that there was no legal obligation to pay for this property, but I cannot agree with him in saying there was no moral obligation to compensate for the property furnished. Indeed, I do not think it can be said,

as a matter of law, that there was no legal obligation to pay for the articles furnished, for the record is very meager as to the circumstances surrounding the transaction. If the claim depended entirely upon the proof, as shown by the record, that the property was furnished under such circumstances as to create a liability, it might well be said that the case made by the plaintiff must fail for want of proof. But that is not this case. Here, as I have before said, we have not got the testimony of the principals to the transaction, for the reason that one is dead, and the other incompetent to testify; but we have the written admission of the deceased that the note was given for value received. This being so, it cannot be said the case of the plaintiff failed for want of proof. I think the case was properly submitted to the jury by the learned trial judge, and that the judgment should be affirmed.

LONG, C. J., MONTGOMERY and HOOKER, JJ., concurred with MOORE, J.